IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. MULLINS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

LARRY MULLINS, APPELLANT.


Filed September 22, 2020.    No. A-19-854.


Appeal from the District Court for Otoe County: JULIE D. SMITH, Judge. Affirmed.

Michael Ziskey, Otoe County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Matthew P.A. Lewis for appellee.


PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Larry Mullins appeals his convictions and sentences in the district court for Otoe County for nine offenses related to the sexual assault and child abuse of his granddaughter. Mullins takes issue with the trial court allowing the State to present evidence of a prior sexual assault, finding that the evidence was sufficient to support the jury's guilty verdicts, and imposing excessive sentences. Mullins also assigns that his trial counsel was ineffective in various ways. Based on the reasons that follow, we affirm.

## II. BACKGROUND

On May 24, 2018, the State filed an information charging Mullins with nine offenses: count I, first degree sexual assault of a child; count II, third degree sexual assault of a child; count III, incest; count IV, first degree sexual assault of a child; count V, third degree sexual assault of a child; count VI, incest; count VII, third degree sexual assault of a child; count VIII, third degree

sexual assault of a child; and count IX, intentional child abuse. The victim of the offenses was his granddaughter.

The State filed a motion to present evidence at trial of a prior sexual assault committed against another granddaughter, K.M., pursuant to Neb. Rev. Stat. § 27-414 (Reissue 2016). Mullins is the paternal grandfather of K.M. and the victim in this case. K.M. and the victim have the same father but different mothers.

A hearing was held on the State's motion. At the hearing, K.M., who was 21 years old at the time, testified that when she was 5 or 6 years old, she was taking a nap on the floor in her grandparents' bedroom and Mullins was napping on his bed. K.M. could not remember why, but she got in Mullins' bed. Mullins subsequently put her on top of him, pulled down his pants, exposing his penis, and asked K.M. if she would "suck on it." K.M. refused. K.M. testified that following the incident, Mullins told her not to tell anyone or she would never see him or other family members again. K.M. told her cousin what had happened, but told her not to tell anyone. She also told her grandmother and father shortly after the incident, but they did not believe her. K.M. testified that after she made the allegations against Mullins, she was told by family members that she was confused about what happened and that it was Mike, her stepfather at the time, who touched her. She testified that she did not want to talk about what had happened so she just went along with the allegations against Mike. She was then told by family members to write a letter stating that it was Mike who sexually assaulted her. She testified that Mike never touched her inappropriately.

K.M. testified that when she was 10 years old, she told friends about the incident with Mullins, and the friends encouraged her to tell her mother. She then wrote out what happened to her and gave it to her mother. The letter to her mother stated that Mullins kissed her on the lips, took her hand and put it on his penis, told her to suck it, and stuck his penis in her butt. She also wrote that Mullins told her not to tell anyone. The letter was received into evidence.

The evidence also showed that no criminal charges were filed against Mullins regarding the allegations by K.M.

K.M. also testified that when she was 11 or 12 years old, her step dad at that time, Kenny Squire, touched her inappropriately and was subsequently convicted in Illinois.

Following the hearing, the trial court sustained the State's motion to present § 27-414 evidence at trial.

Trial subsequently followed. Captain Lonnie Neeman of the Nebraska City Police Department testified that the police department received an intake from the Child Abuse Hotline on March 10, 2018, involving sexual assault of a child. The victim was a 10-year-old girl and the accused was Mullins. Neeman set up a forensic interview with the victim at the Child Advocacy Center (CAC) on March 13. Neeman viewed the interview through a closed-circuit television and heard the victim disclose sexual acts and physical abuse and she identified Mullins as the perpetrator. The victim disclosed that she had bruises on her thighs from the physical abuse, which Neeman subsequently observed and took photographs of for his investigation. The pictures were entered into evidence.

The State's next witness was Peg Sneller-Hamilton, the forensic interviewer at the CAC who interviewed the victim. Sneller-Hamilton testified that the victim disclosed sexual assaults during the interview, specifically:

[p]enis in mouth, penis rubbing on vagina . . . put her hands on his penis; touched her under the clothes on her skin; touched her crotch with his hand and with his [penis] inside the part of her crotch, inside the line of her crotch; put his [penis] in her crotch; touched her on her breast inside her shirt rubbing her all over; touched her butt and squeezed her butt; touched her crotch over and under clothes rubbing and squeezing; put his tongue in her crotch; tried to stick his [penis] in her crotch two times; penis in her mouth; tongue in her mouth; his mouth on her vagina.

Sneller-Hamilton testified that the victim identified Mullins as the person who did these things to her.

The victim's mother, Brenna, testified that on March 9, 2018, the victim told her on the phone that she needed to talk with her about something. Brenna stated that the victim insisted that they speak in person. Once they were together, Brenna recalled that the victim was "unlike any time I've ever seen her before" and she "just started bawling hysterically, saying -- shaking and saying, 'Mom, please don't be mad. I'm so scared. Please don't be mad. I'm so scared.' just over and over again." The victim then began to tell Brenna what happened to her earlier that day at Mullins' house. Specifically, Brenna testified:

[the victim] told me the day of the incident that she was over in [Mullins'] old chair, and he came over and rubbed her chest and her bottom. And she said that she tried to get away, and he grabbed her and slapped her and then he stopped when he heard [his wife] coming into the room. . . . And then [the victim] ran into the bathroom and locked the door when [Mullins' wife] came into the room, and so he stopped.

Brenna stated that within a few days of the March 9, 2018, incident, she noticed bruises on the victim's inner thighs. The victim told her that the bruises were from Mullins grabbing her so she could not get away. Brenna also testified that she asked her daughter if March 9 was the only time Mullins had touched her inappropriately and the victim responded that it was not.

On cross-examination, Brenna stated that she never had any doubts as to the claims the victim made to her and that the victim "never wavered from her story one time when she's talked to me." Brenna also testified that the medical evaluation at the CAC revealed no signs of penetration.

Kevin Mullins, the victim's father, and Dale Burner, the victim's uncle, testified about confronting Mullins after the March 9, 2018, incident. Mullins did not deny tickling the victim and swatting or patting her on the butt in a playful manner, but denied touching her in an inappropriate way.

The victim, who was 11 years old at the time of trial, testified about four separate times that Mullins sexually assaulted her. The first sexual assault occurred when she was 6 years old. She testified that she was sleeping overnight at Mullins' house and she was scared of the dark so she went into Mullins' room where he was sleeping, laid on his bed, and tried to go to sleep. She

testified that Mullins then took her hand and put it down his pants. She tried to pull her hand out, but he put it back in. The victim clarified that Mullins put her hand down the front of his pants and that she was touching his penis. The victim said that after Mullins fell asleep she was able to get her hand out of his pants and rolled away from him in the bed. The victim said that no one else was in the bedroom and she did not tell anyone about what had happened.

The second time Mullins touched the victim inappropriately was when she was 7 or 8 years old. The victim testified that she went to sleep in a bed at Mullins' house and woke up in the shower. She was leaning against the shower wall and water was dripping on her face. She recalled having a shirt on, but no pants or underwear. Mullins was also in the shower and was completely naked. The victim testified that while in the shower, Mullins touched her vagina with his hands. Specifically, she testified that Mullins "touched the top, like he rubbed it and he rubbed me inside, too." She also testified that it hurt "because his nails were sharp."

The victim testified that during this same shower incident Mullins "put his penis in there" and that it hurt. The victim said that she was still standing during this, and that Mullins "was bending down" at the knees. The victim testified that Mullins did not say anything while he was doing this, but "just smiled, like, really creepily." She did not say anything because she was scared. She then ran out of the bathroom and into the room she was staying in, shut the door, and locked it. The victim said she did not tell anyone about what happened because Mullins "threatened to kill me, he's threatened to hurt me."

The victim described the third assault, which occurred when she was 8 or 9 years old. She was in the guest bedroom at Mullins' house and had just turned the television off and was going to bed when she heard Mullins outside the door. She heard the door open and "had [her] eyes cracked a little bit so [Mullins] couldn't see [her] eyes open, and he walked into the room." After Mullins came into the room, the victim saw that he had taken off his clothes and he then took off the victim's pants and underwear.

Mullins got into the bed with the victim and "put his penis inside [her] vagina," which she said hurt and was "[w]eird and uncomfortable." After that, Mullins "put his fingers in there." She stated that it felt "weird" and that his fingernails were sharp. The victim stated she was trying not to move because she did not want him to know she was awake. She testified that after Mullins put his fingers in her vagina, he put his tongue inside her vagina. After this, Mullins put his penis in the victim's mouth, which she said was open because she sleeps with her mouth open and was still pretending to be asleep. The victim remembered seeing Mullins' penis during this part of the assault. She testified that she bit down on Mullins' penis while it was in her mouth and then ran out of the room. She again did not tell anyone because she was scared because of Mullins' threats.

The fourth assault of the victim by Mullins occurred on March 9, 2018. The victim testified that she was in the living room and "was sitting on Mullins' chair laying down on [her] back, if you call that sitting . . . . And my grandma went towards the kitchen, and once Mullins saw that she was gone, he was getting up and he started walking towards [her]." The victim testified that Mullins rubbed her breasts under her shirt and that he was "smiling really weird" while touching her breasts. She stated that Mullins rubbed her butt outside of her pants, then rubbed her vagina on the outside of her pants, and then rubbed her legs.

She further testified that as Mullins was rubbing her legs, she was trying to get away and "he slapped -- well, punched, slapped my legs on the inside" with a "partially open, partially closed hand." The victim testified that this hurt and caused bruising. After striking her legs, Mullins then slapped her face. She testified that when Mullins slapped her it broke open a scab in her nose causing it to bleed, but that her grandmother did not see it because she went into the bathroom.

The victim was able to get away from Mullins when they both heard the floor creaking, indicating that the victim's grandmother was coming back into the room. She did not tell her grandmother about the assault because she was afraid. Later that day she did tell her mother about what happened which led to the CAC interview.

On cross-examination, the victim testified that around the time of the assault in the shower, Mullins had suffered a back injury that required surgery and the use of a cane and a walker, but that he had recovered by the time of the assault.

Following the victim's testimony, the State asked permission to introduce its § 27-414 evidence. Mullins' counsel renewed his objection to the presentation of such evidence, which the court overruled. The State then called Neeman to testify regarding the prior sexual assault evidence. He testified that he previously interviewed Mullins in March 2009 in connection with child sexual assault allegations made by K.M. During that interview, Mullins denied the allegations. Neeman also testified that during K.M.'s interview with CAC, she disclosed allegations against Mullins and Squire. Neeman stated that he had knowledge of the two letters K.M. wrote--one accusing Mullins of sexual assault and the other saying she was confused and it was actually Mike who sexually abused her. Neeman testified that the county attorney's office decided not to file charges against Mullins. He also testified that Squire was convicted of sexually assaulting K.M.

The State next called K.M., whose testimony was nearly the same as that provided during the § 27-414 hearing. The letter K.M. wrote to her mother was admitted into evidence at trial, just as it was at the hearing. K.M. also testified about the letter she wrote accusing Mike of sexual assault and that she wrote the letter accusing Mike because she "wanted everything to be over with. [She] was done with questions." The letter accusing Mike was read to the jury and entered into evidence.

After K.M.'s testimony, the victim's CAC interview was played for the jury. The State then rested and Mullins made a motion to dismiss all charges, except count VII, for failure of the State to meet its burden. The motion was denied.

Mullins then presented testimony from Alice Mullins, his wife and the victim's grandmother. She testified that Mullins started having problems with his hips in 2014, which limited his mobility, making walking, standing, and going up and down stairs difficult. She further stated that he hurt his back in 2016, making it difficult to walk up steps, and his movement has been limited since. Alice testified that he is somewhat better, but has no feeling in one of his legs and uses a cane for balance.

When asked about the March 9, 2018, assault, Alice testified that that she had been sitting in the living room and she saw Mullins get up from his chair to get coffee and he "swatted [the victim] on the rear-end and tried to tickle her stomach" on his way to the kitchen, which she agreed was meant to be "playful." Alice stated that she left the room at one point only to go to the

bathroom and to get some coffee. Alice did not recall the victim running out of the room or seeing any injuries to her face.

When asked about the sexual assault that took place in the shower, Alice testified that she did not believe it was physically possible for Mullins to carry the victim into the shower given his injuries and surgeries around that time. She also testified that Mullins cannot squat or be on his knees.

On cross-examination, Alice said that until 2017 she worked nights 5 days a week in the hospital emergency room, leaving Mullins home alone at night. She agreed that from 2013 to 2018, the victim was at her and Mullins' house at least twice a month while she was working overnights at the hospital. Alice also testified that after Mullins' surgery in late 2016, Mullins was in a "body brace" for 4 months before moving to a less restrictive brace. Following Alice's testimony, the defense rested.

The jury found Mullins guilty of all nine counts charged in the information, which the trial court accepted.

A sentencing hearing followed. The trial court sentenced Mullins as follows: first degree sexual assault of a child, a Class IB felony (counts I and IV)--25 to 45 years' imprisonment on each count, with a mandatory minimum of 15 years' imprisonment on each count; third degree sexual assault of a child, a Class IIIA felony (counts II, V, VII, and VIII)--1 to 4 years' imprisonment on each count; incest, a Class III felony (counts III and VI)--5 to 15 years' imprisonment on each count; and intentional child abuse, a Class IIIA felony (count IX)--2 to 3 years' imprisonment. The trial court ordered these sentences be served concurrently.

## III. ASSIGNMENTS OF ERROR

Mullins assigns that the trial court erred in (1) sustaining the State's motion to present § 27-414 evidence, (2) finding that the evidence was sufficient to support the jury's guilty verdicts, and (3) imposing excessive sentences. Mullins also assigns that his trial counsel was ineffective in the following ways: (1) failing to ask the court to reconsider its ruling on the State's motion to present § 27-414 evidence based on newly acquired evidence and inconsistent testimony; (2) failing to object to numerous witness statements that constituted hearsay, were without proper foundation, or were the result of improper questions by the State; (3) failing to present medical evidence of his physical limitations; (4) failing to allow him to testify at trial; (5) failing to properly investigate the case; and (6) failing to call character witnesses on his behalf.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Hill, supra.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate

court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. § 27-414 EVIDENCE

Mullins first argues that the trial court erred in sustaining the State's motion to present § 27-414 evidence at trial. He argues that the State did not prove by clear and convincing evidence that the assault of K.M. occurred, and that the risk of prejudice outweighed the probative value of the evidence.

Subsection (1) of § 27-414 provides:
In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

Subsection (3) of § 27-414 provides:
Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

Section 27-414 allows evidence of prior offenses of sexual assault to prove propensity. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Section 27-414(1) explicitly provides that evidence of the accused's commission of another offense of sexual assault may be considered for its bearing on any matter to which it is relevant. *State v. Valverde, supra*.

No exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is remote under § 27-414(1). *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. *Id.*

Mullins argues that there was not clear and convincing evidence at the § 27-414 hearing that the prior offense occurred based on K.M.'s testimony that she wrote a letter stating that Mike was the one who sexually assaulted her. However, she explained that family members told her she was confused about what happened and that it was Mike who touched her. She testified that she did not want to talk about what happened so she just went along with the allegations against Mike. K.M. testified that she was pressured by family members to write a letter stating that it was not Mullins who had sexually assaulted her, but, rather, it was Mike. She also testified that she wanted to be clear that Mike never sexually assaulted her.

Mullins also argues that the probative value of the § 27-414 evidence was substantially outweighed by the prejudice because the prior incident with K.M. happened over 15 years prior to the present offenses making it untrustworthy. He also argues that the prior incident is not so similar to the crimes charged as to favor admission.

The court conducted a Neb. Rev. Stat. § 27-403 (Reissue 2016) balancing test as it was required to do and found that the risk of prejudice in allowing admission of evidence regarding the prior sexual assault did not substantially outweigh the probative value of the evidence. It found similarities between the allegations by the victim and K.M. were sufficient to conclude that the evidence was probative. These similarities included: the same familial relationship with Mullins, being of similar age when the assaults occurred, all allegations occurring at Mullins' home, assaults occurred while napping or sleeping, attempts at oral sex by Mullins on both K.M. and the victim, forcing K.M. and the victim to touch his penis, and similar threats to both about not telling anyone. The court further found that the conduct regarding K.M. was not so far remote in time to warrant exclusion, given the "striking similarities" between the alleged incidents.

Based on our review of the record, we find that the district court did not abuse its discretion in sustaining the State's motion to present § 27-414 evidence.

Mullins also argues that the court should have reconsidered its § 27-414 ruling at trial after K.M.'s letter accusing Mike of touching her inappropriately was entered into evidence and based on inconsistent testimony by K.M. Mullins did not assign the court's failure to reconsider its § 27-414 ruling at trial as error; he only assigned that the court erred in sustaining the State's motion to present § 27-414 evidence. See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016) (for alleged error to be considered by appellate court, appellant must both assign and specifically argue alleged error). However, Mullins does assign that his trial counsel was ineffective in failing to ask the court at trial to reconsider its § 27-414 ruling. Accordingly, this argument will be addressed later in the context of an ineffective assistance of counsel claim.

## 2. SUFFICIENCY OF EVIDENCE

Mullins next assigns that the evidence was insufficient to support a guilty jury verdict because a rational trier of fact could not find the elements of the offenses charged beyond a reasonable doubt. Mullins makes this argument in regard to seven of the nine charges; he makes no argument in regard to counts V and VII, two of the third degree sexual assault of a child charges.

Counts I and IV charged Mullins with first degree sexual assault of a child, in violation of Neb. Rev. Stat. § 28-319.01(2) (Reissue 2016) and counts III and VI charged Mullins with incest, in violation of Neb. Rev. Stat. § 28-703 (Reissue 2016). All four counts require the State to prove sexual penetration. Mullins argues the evidence of penetration was insufficient because Brenna, the victim's mother, testified that no penetration was found during the medical examination performed at CAC.

"Sexual penetration" is defined under Neb. Rev. Stat. § 28-318(6) (Reissue 2016) to include "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body." The slightest intrusion into the genital opening is sufficient to constitute penetration, and such element may be proved by either direct or circumstantial evidence. It is not necessary that the vagina be entered or that the hymen be ruptured, the entry of the vulva or labia is sufficient. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). Therefore, the fact that the medical examination found no type of penetration was not definitive evidence that penetration as defined by § 28-318(6) did not occur.

The victim testified that when she was 7 or 8 years old, she woke up in the shower where Mullins put his fingers and his penis in her vagina. She also testified that when she was 8 or 9 years old and was sleeping in the guest bedroom at her grandparents' house, Mullins put his penis, fingers, and tongue in her vagina. Accordingly, the victim's testimony was sufficient to support a finding of sexual penetration in regard to counts I, III, IV, and VI.

Mullins next argues that the evidence was insufficient to sustain a guilty verdict in regard counts I, II, and III because there was evidence that he was physically incapable of committing those crimes as described by the victim. Count I, first degree sexual assault of a child; count II, third degree sexual assault of a child; and count III, incest, all relate to the assault that occurred in the shower. The victim testified that she had been sleeping in a bed at Mullins' house and she woke up in the shower, leaning against the wall. She testified that while in the shower Mullins first put his hand in her vagina and then put his penis inside her vagina. She testified that he had his knees bent so he could get low enough to put his penis inside her. The victim testified that the assault stopped when she grabbed her clothes, ran out of the bathroom, and went into the bedroom where she had been sleeping and locked the door. On cross-examination it was pointed out that when the victim had her deposition taken, she stated that she put on her clothes and went downstairs where her grandma, Alice, was in the kitchen. She stated that she was partially wet when she went downstairs, but her grandma just thought she had taken a shower.

Mullins argues that the victim's version of events in the shower cannot be true based on Alice's testimony that it would have been physically impossible for Mullins to carry the victim, who was asleep, to the shower due to his back surgery. Mullins also points out that Alice testified that she never saw the victim come downstairs unexpectedly wet. Mullins does not argue that any

particular elements of the crimes alleged in counts I, II, and III were not met. Rather, he basically contends that Alice's testimony was more credible than the victim's.

An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Here, the jury as the finder of fact heard testimony about the details of the assault in the shower as well as testimony about Mullins' physical limitations. Viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of counts I, II, and III beyond a reasonable doubt.

Mullins also argues there was insufficient evidence to sustain a conviction in regard to count VIII, third degree sexual assault of a child, and count IX, intentional child abuse. Counts VIII and IX related to events that occurred on March 9, 2018, when the victim was lying in a chair in Mullins' living room. Mullins argues that the events as described by the victim could not have happened because Alice testified that she was present in the living room with Mullins and the victim when the alleged incident occurred and that she saw no signs of physical or sexual abuse by Mullins against the victim. The victim testified that the sexual and physical abuse happened when Alice was out of the room. Alice admitted that she left the room for a short time to go the bathroom and to get some coffee.

Again, Mullins' argument is based on conflicts in the evidence and the credibility of witnesses. As previously stated, such matters are for the finder of fact and not an appellate court. See *State v. Mora, supra.* Based on the record before us, we conclude that any rational trier of fact could have found the essential elements of counts VIII and IX beyond a reasonable doubt.

### 3. EXCESSIVE SENTENCES

Mullins next assigns that the trial court erred in imposing excessive sentences. He contends that the court did not give sufficient consideration to his advanced age (70 years old on the date of sentencing), his lack of any criminal history, and his low risk to reoffend.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Mullins was convicted of two counts of first degree sexual assault of a child, Class IB felonies, which carry a maximum sentence of life imprisonment, and a minimum sentence of 20 years' imprisonment. § 28-319.01; Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Sexual assault of a child in the first degree carries a mandatory minimum sentence of 15 years in prison for the first offense. § 28-319.01(2). On each of those two counts, Mullins was sentenced to a term of imprisonment of 25 to 45 years, with a mandatory minimum of 15 years.

Mullins was found guilty of four counts of third degree sexual assault of a child, Class IIIA felonies, one of which was committed after the statutory sentencing guidelines changed. See Laws 2015, LB 605, § 6, effective August 30, 2015. When the first three of the third degree sexual assault of a child offenses were committed, a Class IIIA felony was punishable by maximum of 5 years' imprisonment, a $10,000 fine, or both, and no minimum sentence. Neb. Rev. Stat. § 28-320.01

(Reissue 2016); § 28-105 (Cum. Supp. 2012). On those three charges, Mullins was sentenced to 1 to 4 years' incarceration on each charge.

At the time the fourth third degree sexual assault of a child offense was committed, a Class IIIA felony was punishable by a maximum of 3 years' imprisonment and 18 months' postrelease supervision or $10,000 fine, or both. There is no minimum term of imprisonment, and a minimum of 9 months' postrelease supervision must be ordered if imprisonment is imposed, with exceptions. § 28-320.01; § 28-105 (Reissue 2016). On this charge, Mullins was sentenced to 2 to 3 years' imprisonment. No postrelease supervision was ordered. See § 28-105 (any person sentenced to imprisonment for Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for Class III, IIIA, or IV felony shall not be subject to postrelease supervision).

Mullins was found guilty of two counts of incest, Class III felonies, which carry a maximum sentence of 20 years' imprisonment, a $25,000 fine, or both, with a minimum sentence of 1 year's imprisonment. Neb. Rev. Stat. § 28-703 (Reissue 2016); § 28-105 (Cum. Supp. 2012). The court sentenced Mullins to 5 to 15 years' imprisonment on each count.

Mullins was also convicted of one count of intentional child abuse, a Class IIIA felony. Like one of the third degree sexual assault of a child charges, this charge took place after the sentencing guidelines were revised. Accordingly, this Class IIIA felony was punishable by a maximum of 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both, and no minimum term of imprisonment, and 9 months' postrelease supervision if imprisonment is imposed. § 28-105(1) (Reissue 2016). On this charge, Mullins was sentenced to 2 to 3 years' imprisonment. No postrelease supervision was ordered. See § 28-105 (any person sentenced to imprisonment for Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for Class III, IIIA, or IV felony shall not be subject to postrelease supervision).

All of Mullins' sentences were within the statutory limits and we review his sentences for an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

At the sentencing hearing, the court heard arguments from both parties and also gave Mullins an opportunity to address the court, which he did. The court pointed out that counts I and IV, first degree sexual assault of a child, required mandatory minimum sentences, ruling out probation. The court stated that it reviewed and considered the testimony at trial, the letters in

support of Mullins, the circumstances surrounding the offenses, the victim impact statements, the sex offender evaluation, and all the information contained in the presentence investigation report. It also stated that it considered Mullins' statement in the presentence investigation report as well as his statements at the hearing. The court further noted that Mullins had no prior criminal history.

Given that the court considered the appropriate factors and the record does not show the court considered improper factors, and that some of the offenses carried a potential maximum sentence of life imprisonment, we cannot say that the court's sentences were an abuse of discretion. We determine that the trial court did not abuse its discretion in sentencing Mullins.

#### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Mullins next claims that his trial counsel provided ineffective assistance in various respects. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

Mullins has different counsel on appeal, and Mullins specifically claims that his trial counsel provided ineffective assistance by (1) failing to ask the court to reconsider its ruling on the State's motion to present § 27-414 evidence based on newly acquired evidence and inconsistent testimony, (2) failing to object to numerous witness statements that constituted hearsay, were without proper foundation, or were the result of improper questions by the State, (3) failing to present medical evidence of his physical limitations, (4) failing to allow him to testify at trial, (5) failing to properly investigate the case, and (6) failing to call character witnesses on his behalf.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The two prongs of this test may be addressed in either order, and the entire ineffective assistance analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Golyar, supra.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

#### (a) Failure to Ask Court to Reconsider § 27-414 Evidence

Mullins first argues that his trial counsel was ineffective for failing to ask the court during the trial to reconsider its ruling allowing the State to present § 27-414 evidence based on newly acquired evidence and inconsistent testimony at trial. Mullins first argues that the letter K.M. wrote recanting her allegations against Mullins was newly discovered evidence. The letter was entered

into evidence at trial; it was not entered at the § 27-414 hearing. Mullins claims the letter was clear and convincing evidence that the offenses did not occur and that his counsel should have asked the court to reconsider its ruling on § 27-414 evidence based on such evidence.

In the letter, K.M. stated "I got confused[.] I think that Mike done it & I had a dream that you done it. because my mom said that Mike touched my bottom & he got turned in for it." Although the letter was not entered into evidence at the § 27-414 hearing, K.M. testified at the hearing that she wrote such letter and talked about what it said and why she wrote it. She testified that family members told her she was confused and that it was Mike who touched her inappropriately, and they made her write a letter blaming him. She testified that she did not want to talk about what had happened so she just went along with the allegations against Mike. Accordingly, the court was fully aware of the letter K.M. wrote and its contents recanting her allegations against Mullins at the time it made its decision on the State's motion to allow § 27-414 evidence. Having the actual letter entered into evidence at trial did not provide any new evidence from that presented at the hearing.

Mullins also argues that counsel should have asked the court to reconsider its ruling on allowing § 27-414 evidence because K.M.'s testimony at trial was inconsistent with her testimony at the hearing. K.M. testified at trial that Mullins put his penis "on her butt" while she was wearing shorts or pants, whereas at the hearing, K.M. stated that Mullins "stuck his penis in her butt." Although the way K.M. described the events differed somewhat from her testimony at the hearing, her testimony was not necessarily inconsistent. She added that she was wearing clothing but her testimony that Mullins put his penis "on her butt" instead of "in her butt" was a distinction without a difference for § 27-414 purposes.

Mullins has not demonstrated deficient performance by his trial counsel because there was no new evidence and K.M.'s testimony at trial was not inconsistent. Rather, she just described one part of the encounter with Mullins differently. We conclude that the record is sufficient to address this claim and that Mullins has failed to show that counsel's performance was deficient. Where the record refutes a claim of ineffective assistance of counsel, no recovery may be had. See *State v. Liner*, 24 Neb. App. 311, 886 N.W.2d 311 (2016). Since the record affirmatively refutes Mullins' claim that his trial counsel was ineffective for failing to ask the court to reconsider its ruling allowing the State to present § 27-414 evidence, his claim must fail.

(b) Failure to Object to Certain Testimony

Mullins alleges that his trial counsel was ineffective by failing to object to numerous witness statements that constituted hearsay, were without proper foundation or were the result of improper questions by the State. Specifically, he argues: (1) Neeman provided hearsay testimony about what the victim stated on the CAC video; (2) Neeman provided hearsay testimony about what the victim disclosed; (3) counsel did not object on lack of foundation when Sneller-Hamilton was asked if children can falsely report or claim sexual abuse to a forensic interviewer and she testified "They could, but it's very rare they do"; (4) no foundation objection to a response from a question of whether the victim made any statements that were obviously imaginary or delusional; (5) Sneller-Hamilton provided hearsay testimony about the victim's disclosures during her interview; (6) no hearsay or foundation objection to Brenna's testimony about what the victim's

principal and therapist told her, no hearsay objection to Brenna's testimony about what the victim said to her; and (7) no objection to improper form of questions regarding Brenna's and Kevin's opinion on whether they believe the victim when she tells them something. Mullins alleges that all of this improperly admitted evidence that was not objected to resulted in a cumulative effect of ineffective assistance of counsel. Mullins does not explain these allegations further. He gives citations to the record after each alleged failure to object but no argument to support his claim that counsel's inaction was deficient. Without more, Mullins has failed to allege with sufficient specificity how trial counsel was deficient in failing to object to numerous witness statements. In addition, the decision to object or not to object is part of trial strategy, and an appellate court gives due deference to defense counsel's discretion in formulating trial tactics. *State v. Lieberman*, 222 Neb. 95, 382 N.W.2d 330 (1986). Accordingly, Mullins' claim that counsel was ineffective in failing to object to various statements fails.

### (c) Failure to Present Medical Evidence

Mullins argues that his trial counsel was ineffective by failing to present medical evidence of his physical limitations. He argues that although Alice testified about his medical history and physical limitations, it would have been more effective to have his doctor testify or to present medical records to show that it was not physically possible for him to have committed certain crimes as the victim alleged. We conclude that the record is insufficient to address this claim on direct appeal as there is nothing to indicate why counsel did not choose to present medical evidence of Mullins' physical health.

### (d) Failure to Allow Mullins to Testify

Mullins next claims that his trial counsel was ineffective by not allowing him to testify at trial, despite his desire to do so. Any discussions between Mullins and his counsel about Mullins testifying are not before us and therefore, the record is not sufficient to address this claim on direct appeal.

### (e) Failure to Properly Investigate Case

Mullins argues that his trial counsel did not properly investigate his case. He specifically alleges that counsel failed to go to his home to view the places where the crimes allegedly occurred, failed to offer photographs that may have rebutted the victim's testimony, and failed to interview his doctor regarding his physical limitations. Mullins does not explain or argue these allegations further. He does not state what investigation into these areas would have shown or how it would have changed the outcome of the trial. We conclude that Mullins has failed to make sufficiently specific allegations of deficient conduct in regard to this claim.

### (f) Failure to Call Character Witnesses

Finally, Mullins claims that his trial counsel was ineffective for not calling character witnesses at trial who could have testified that he never acted in conformity with what was alleged in this case. Although Mullins states generally what character witnesses would have testified to, he did not name the individuals. The Nebraska Supreme Court has required a significant degree of specificity in such claims. The Supreme Court has said that it can think of no good reason why an

appellant would be unable to give appellate counsel the names or descriptions of the uncalled witnesses he claims he informed trial counsel of. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). Accordingly, because Mullins did not identify or specifically describe the character witnesses he claims counsel should have called, he failed to make sufficiently specific allegations of deficient conduct.

## VI. CONCLUSION

We conclude that the trial court did not err in allowing the State to present evidence of a prior sexual assault pursuant to § 27-414, did not err in finding that the evidence was sufficient to support the jury's guilty verdicts, and that the sentences imposed were not excessive. We further conclude that Mullins' ineffective assistance of counsel claims either fail, are not sufficiently presented for our review, or the record is insufficient to address his claims on direct appeal. Accordingly, we affirm Mullins' convictions and sentences.

AFFIRMED.