Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:10 PM CST

State of Nebraska, appellee, v.
Felipe German Mora, appellant.

___ N.W.2d ___

Filed November 9, 2017.    No. S-16-1120.

1. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Sentences: Words and Phrases: Appeal and Error.** An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

5. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

6. **Rules of Evidence: Hearsay: Physician and Patient.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment are not excluded by the hearsay rule.

7. **Rules of Evidence: Hearsay: Proof.** In order for statements to be admissible under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016), the party seeking to introduce the evidence must demonstrate (1) that the circumstances under which the statements were made were such that the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) that the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.

8. **Rules of Evidence: Hearsay.** A statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes.

9. ____: ____. Excited utterances are an exception to the hearsay rule, because the spontaneity of excited utterances reduces the risk of inaccuracies inasmuch as the statements are not the result of a declarant's conscious effort to make them.

10. ____: ____. For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event. The true test is not when the exclamation was made, but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event.

11. **Trial: Evidence: Appeal and Error.** The improper admission of evidence is a trial error and subject to harmless error review.

12. **Criminal Law: Juries: Evidence.** In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.

13. **Trial: Convictions: Evidence.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

14. **Sentences.** When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence

involved in the commission of the offense. However, the sentencing court is not limited to any mathematically applied set of factors.

15. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

16. ____. It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes.

17. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

18. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

19. **Effectiveness of Counsel: Records: Appeal and Error.** On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record.

20. ____: ____: ____. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

21. ____: ____: ____. An appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance.

22. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

23. **Claims: Effectiveness of Counsel.** A claim of ineffective assistance of counsel insufficiently stated is no different than a claim not stated at all.

Appeal from the District Court for Lancaster County: JEFFRE CHEUVRONT, Judge, Retired. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Shawn Elliott for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## I. INTRODUCTION

In this direct appeal from criminal convictions and sentences, Felipe German Mora (Mora) challenges the overruling of his hearsay objections, the sufficiency of the evidence, the excessiveness of his sentences, and whether his trial counsel provided effective assistance. Because we find no error and the record is insufficient to review the allegations of ineffective assistance of counsel that were sufficiently stated, we affirm the district court's judgment.

## II. BACKGROUND

The State charged Mora with four counts of first degree sexual assault of a child and one count of third degree sexual assault of a child. The victim in each count was B.C. Counts I through III alleged that between December 30, 2010, and September 18, 2015, Mora subjected B.C. to sexual penetration in Lincoln, Nebraska. Each count differed only as to the address of the crime: E Street, Theresa Street, and Saunders Avenue, respectively. Count IV alleged that on September 19, 2015, Mora subjected B.C. to sexual penetration. And count V alleged that between December 30, 2010, and September 19, 2015, Mora subjected B.C. to sexual contact. Because Mora was born in February 1983 and B.C. was born in December 2004, at the times of the crimes, Mora was at least 19 years old and B.C. was under the age of 12. We recite the evidence in the light most favorable to the State.

The evidence at trial established that B.C. came to the United States when she was 6 years old. B.C. began living

with her mother, Marcela M., and Marcela's partner, Mora, on E Street. Over time, B.C. got to know Mora and thought of him "[l]ike a dad." Because Mora was acquitted on the count pertaining to sexual penetration at the E Street address, we recite only the evidence relevant to the count for sexual contact. While living at the E Street address, Mora began touching B.C.'s vagina under her clothes with his hands.

When B.C. was 8 years old, she moved to Theresa Street. B.C. testified that Mora "rubbed his fingers up and down" her vagina and began inserting his penis in her vagina. These acts occurred at the Theresa Street address more than 20 times.

When B.C. was 10 years old, she moved to Saunders Avenue. At that location, Mora put his penis inside of B.C.'s vagina on more than 10 occasions. B.C. did not tell anybody what Mora was doing because she was scared.

On the morning of September 19, 2015, Mora subjected B.C. to penile-vaginal intercourse. Defense counsel pointed out some inconsistencies in B.C.'s testimony with regard to this assault. B.C. testified in a deposition that Mora took her clothes off, but she testified at trial that Mora told her to take her clothes off and that she complied. At trial, B.C. testified that she did not see any ejaculate that day, but she told an investigator that Mora "put white stuff on [her] stomach." B.C. admitted that it was difficult to remember all the details. She explained that the events happened a number of times, with Mora's taking her clothes off at times and B.C.'s taking her own clothes off at other times.

On the evening of September 19, 2015, Mora took B.C. to the residence of his brother, Rafael German Mora (Rafael), while Marcela and Mora went to a casino in Council Bluffs, Iowa. Rafael's partner, Maricela Saldivar, saw Rafael kissing B.C. and touching her vaginal area with his hand over her clothes. After Saldivar sent Rafael to the store, Saldivar asked B.C., "'What is going on? Why did this happen?'" B.C. said that nothing happened, but then began crying and said that Rafael was touching her. After Saldivar testified she told B.C. that Saldivar needed to tell Mora what had occurred,

the prosecutor asked what happened. Defense counsel raised a hearsay objection, which the court overruled. Saldivar then testified that B.C. "said no because her dad was doing the same thing to her." Saldivar testified that when she told Mora what happened was not right, Mora did not deny touching B.C. and instead just said that Saldivar did not know what he had "gone through."

Marcela testified that as she and Mora were returning to Lincoln from the casino, B.C.'s aunt told Marcela over a cell phone that B.C. said Mora had been sexually abusing B.C. Marcela asked Mora if it was true, but Mora denied doing anything. Once they arrived in Lincoln, Marcela went to see B.C., because B.C. was crying. The prosecutor asked what B.C. said to Marcela, and Mora's counsel objected as to hearsay. The court overruled the objection. Marcela answered: "I asked [B.C.] if it was true what . . . had been said about [Mora's] having been abusing her sexually. [B.C.] said yes."

Marcela testified that after police were called, Mora said, "'Yes, I did it,' but that [Marcela] was at fault because [she] would always leave [B.C.] with him when [Marcela] had to go to work." Marcela later discovered a text on her cell phone from Mora, sent September 20, 2015, at 2:07 a.m. The message was in Spanish, but the English translation was either: "'Sorry. I'll never forget you.'" or "'Forgive me. I will never forget [the] two of you.'"

On September 20, 2015, Eileen Bonin, a sexual assault nurse examiner, examined B.C. In her experience, it was infrequent to find injuries when conducting sexual assault examinations. Bonin observed some redness on B.C.'s right labia minora, which was an unusual finding. Defense counsel raised a hearsay objection when the prosecutor asked what B.C. told Bonin about what had occurred, but the court overruled the objection. Bonin testified that B.C. said her "stepdad, [who was] not really her stepdad," had been touching B.C. since she was 7 years old and that her uncle had been touching her for approximately 9 months. Bonin testified that B.C. told her that Mora "put his private parts in her private parts."

On September 20, 2015, an investigator used cotton swabs to obtain DNA from Mora's hands and penis. The swab from Mora's penis revealed a mixture of DNA of at least two individuals. B.C. was included as a major contributor, but Mora was excluded. In other words, B.C.'s DNA was on Mora's penis.

On September 22, 2015, Dr. Stacie Bleicher, the medical director at a child advocacy center, performed a followup examination on B.C. During Bleicher's testimony, when the prosecutor asked if B.C. said anything that was significant to Bleicher, defense counsel objected on the ground of hearsay. After the court overruled the objection, Bleicher answered that B.C. said she "had sexual contact by both her stepfather and . . . her uncle."

An inmate incarcerated at prison testified about what Mora told him while they were both being held at the Lancaster County jail. The inmate asked Mora about his case, and Mora said that he did not do the crime. But the next day, Mora told the inmate that he had sexual intercourse with a young female, his stepdaughter. The inmate had hoped to get some leniency in court for this information, but at the time of his testimony, he had not received any accommodation nor been offered a deal. The inmate admitted that he had previously cooperated with authorities on a number of occasions.

After the State rested its case, the defense did not call any witnesses or offer evidence.

The jury found Mora not guilty of count I, but guilty of the other counts. The district court sentenced Mora to imprisonment as follows: on count II, 30 years, 15 of which were a mandatory minimum, to life; on count III, 30 years, 15 of which were a mandatory minimum, to life; on count IV, 30 years, 15 of which were a mandatory minimum, to life; and on count V, "a period of 3 years." The court ordered that counts II and III run concurrently with one another but consecutively to counts IV and V. It ordered that counts IV and V were to be served consecutively to each other and consecutively to counts II and III.

Through counsel different from trial counsel, Mora timely filed an appeal.

## III. ASSIGNMENTS OF ERROR

Mora assigns that the district court erred in (1) permitting the State to introduce hearsay statements of B.C. based on the medical purpose and excited utterance exceptions to the hearsay rule, (2) adjudging him guilty when the evidence was insufficient, and (3) imposing excessive sentences.

Mora also assigns that he was denied the right to the effective assistance of counsel due to counsel's failure to (1) adequately communicate in order to prepare a defense and explore options, (2) properly advise him about the right to testify, (3) have the penile swab retested and retain an expert to refute the State's DNA evidence, and (4) explore calling character witnesses at trial.

## IV. STANDARD OF REVIEW

[1] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.[1]

[2] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

---

[1] *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

[2] *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017).

[3] An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

[4,5] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[4] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## V. ANALYSIS

### 1. Hearsay

#### (a) Medical Purpose Exception

Mora argues that the district court erred in admitting B.C.'s statements to Bonin and Bleicher that Mora sexually abused her. Mora contends that such statements were not pertinent to medical diagnosis or treatment and that identification of the abuser should not have been permitted because he was not in a position to return home. We disagree.

[6-8] Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment are not excluded by the hearsay rule.[6] In order for statements to be admissible under rule 803(3), the party seeking to introduce the evidence must demonstrate (1) that the circumstances

---

[3] *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

[4] *State v. Mendez-Osorio, supra* note 2.

[5] *Id.*

[6] Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016).

under which the statements were made were such that the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) that the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.[7] A statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes.[8]

B.C.'s statements to Bonin and Bleicher meet the admissibility requirements. B.C.'s statement to Bonin, a sexual assault nurse examiner, came during Bonin's examination which was performed in a hospital's emergency room. Bonin testified that in conducting an examination, she wants to find out what happened to help with her medical assessment. B.C.'s statement to Bleicher, a doctor, occurred while Bleicher performed a followup examination. Bleicher testified that she makes inquiries about what happened in order to determine whether any further testing may be necessary and to help guide her medical evaluation.

We have previously touched on whether statements regarding the identity of the perpetrator could be admitted under rule 803(3). In *State v. Vigil*,[9] we recognized that identity can be pertinent to diagnosis and treatment:

> While statements relating to fault are generally not admissible under rule 803(3), when a child is sexually abused, and especially when the child has a familial relationship with the child's abuser, the identity of the perpetrator is reasonably pertinent to diagnosis and treatment, because the victim cannot be effectively treated if sent right back into the abuser's clutches.

Mora claims the above reason for allowing the identity of the perpetrator is inapplicable here. He points out that in *Vigil*, the defendant was going to return home in approximately 1 week.

---

[7] *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012).

[8] *Id.*

[9] *Id.* at 141, 810 N.W.2d at 698.

On the other hand, Mora states that "it is fanciful to believe that [he] would have been back in the family home."[10] But it was not "fanciful" at the time of the examinations: Mora had not been charged with a crime at the time of Bonin's examination, and Bleicher's examination occurred on the same day that the State charged Mora with sexual assault.

Regardless, in *Vigil*, we concluded that the frequency and nature of the victim's sexual contacts with a perpetrator are part of the victim's medical history. The same is true of B.C.'s sexual contacts with Mora. We conclude the district court did not err in allowing Bonin and Bleicher to testify as to what B.C. told them during their medical examinations.

### (b) Excited Utterance Exception

Mora next argues that the district court erred by admitting B.C.'s statements to Marcela and to Saldivar under the excited utterance exception. B.C. made the statements after Rafael had touched her, and Mora contends that "[t]he startling event which the State relied upon did not relate to [Mora's] purported assault of the victim."[11]

[9,10] Excited utterances are an exception to the hearsay rule, because the spontaneity of excited utterances reduces the risk of inaccuracies inasmuch as the statements are not the result of a declarant's conscious effort to make them.[12] For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event. The true test is not when the exclamation was made, but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event.[13]

---

[10] Brief for appellant at 35.

[11] *Id.* at 30.

[12] *State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016).

[13] *Id.*

[11-13] Assuming without deciding that the testimony was inadmissible hearsay, any error was harmless. The improper admission of evidence is a trial error and subject to harmless error review.[14] In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.[15] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[16] Here, there was ample evidence to support Mora's convictions even without these statements: B.C. testified that the assaults occurred, a swab of Mora's penis contained B.C.'s DNA, and Mora admitted the assaults to Marcela and an inmate.

## 2. Sufficiency of Evidence

Mora attacks the sufficiency of the evidence in a number of ways. He claims that the State's medical evidence and DNA evidence did not establish Mora sexually assaulted B.C. He also asserts that his purported admissions to Marcela and the inmate were unreliable. Mora further argues that B.C.'s testimony provided little detail about the assaults and that she was inconsistent with regard to some of the details about the September 19, 2015, assault. But these attacks are directed at the credibility of witnesses and the weight to be given to evidence—they were matters for the jury to consider. By returning guilty verdicts, the jury rejected these arguments. On appeal, our role is different.

As set out in our standard of review, the relevant question for an appellate court in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

---

[14] *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[15] *Id.*

[16] *Id.*

have found the essential elements of the crime beyond a reasonable doubt.[17] Clearly, one could.

As applicable to the facts of this case, a person at least 19 years of age commits sexual assault of a child in the first degree when he subjects another person under 12 years of age to sexual penetration.[18] And a person at least 19 years of age commits sexual assault of a child in the third degree when he subjects another person 14 years of age or younger to sexual contact and does not cause serious personal injury to the victim.[19] At all relevant times, Mora was at least 19 years of age and B.C. was a person under 12 years of age. B.C.'s testimony established that Mora subjected her to penile-vaginal intercourse and that he touched her vagina with his hands at various locations in Lincoln. The evidence supported Mora's convictions.

### 3. EXCESSIVENESS OF SENTENCES

Mora argues that the district court abused its discretion by imposing excessive sentences. He does not assert that the sentences were outside the statutory ranges; rather, he contends that the court should have imposed the minimum sentence permitted by law, should have not imposed a life sentence as the maximum term, and should have run all of the sentences concurrent with one another.

[14-16] When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. However, the sentencing court is not limited to any mathematically applied set of factors.[20] The

---

[17] *State v. Dehning*, 296 Neb. 537, 894 N.W.2d 331 (2017).

[18] See Neb. Rev. Stat. § 28-319.01(1)(a) (Reissue 2016).

[19] See Neb. Rev. Stat. § 28-320.01(1) and (3) (Reissue 2016).

[20] *State v. Dehning, supra* note 17.

appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[21] It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes.[22]

At the time of sentencing, Mora was 33 years old. Mora described himself as coming from a "poor and humble family" in Mexico. His prior criminal record consisted of minor traffic violations. And his score on a sex offender risk assessment tool placed him in the low risk range. But as the district court stated: "[S]ociety has an obligation to protect those of a tender age who are vulnerable and unable to protect themselves. It is clear that [B.C.] loved you, she considered you to be her father and trusted you, and you took advantage of that trust and violated that trust." And the violations occurred repeatedly over 4 years. We conclude that the court did not abuse its discretion in imposing Mora's sentences.

### 4. Suggestion of Plain Error

[17] The State asserted in its brief that the sentence imposed for third degree sexual assault of a child presented plain error. According to the State, Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) required the district court to impose an indeterminate sentence. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[23]

However, at oral argument, counsel for the State forthrightly conceded that there was no plain error. We agree. By its terms, § 29-2204.02(4) applies to a Class IIIA felony "for

---

[21] *Id.*

[22] *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017).

[23] *State v. Mendez-Osorio, supra* note 2.

an offense committed on or after August 30, 2015." But in this case, the charged offense straddled August 30, 2015. The jury did not make any specific finding as to when the crime occurred, and B.C.'s testimony about Mora's assaults could cover dates both before and after August 30. Another statute adopted at the same time as § 29-2204.02(4) states that "an offense shall be deemed to have been committed prior to August 30, 2015, if any element of the offense occurred prior to such date."[24] In the absence of a specific jury finding demonstrating that the offense was "committed on or after August 30, 2015,"[25] we find no plain error.

## 5. Ineffective Assistance of Counsel

[18] Finally, Mora claims that he received ineffective assistance of trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[26]

[19,20] On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record.[27] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[28] Both parties assert that the record on appeal is insufficient to address any of the ineffective assistance of counsel claims.

[21-23] But an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective

---

[24] Neb. Rev. Stat. § 28-116 (Reissue 2016).

[25] § 29-2204.02(4).

[26] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[27] *Id.*

[28] *Id.*

assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance.[29] An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[30] A claim insufficiently stated is no different than a claim not stated at all.[31] We assess the sufficiency of Mora's claims of ineffective assistance of counsel.

### (a) Failure to Adequately Communicate

Mora assigns that trial counsel failed to adequately communicate with him to prepare a defense and to explore his options. Mora contends that counsel "only met with him a few times with an interpreter prior to the commencement of the jury trial"[32] and that counsel "did not engage in meaningful conversations about the State's evidence and what evidence [Mora] had to rebut the charges he faced."[33] But these statements are not sufficient allegations of deficient performance. Mora also claims that due to the lack of communication, "he was unable to make an informed decision about whether to engage in plea negotiations, whether to accept a plea offer, what defense to present at trial and whether he should testify or remain silent."[34] But this is a conclusory statement that also fails to set forth counsel's deficiency. We believe the only

---

[29] *Id.*

[30] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[31] *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

[32] Brief for appellant at 46.

[33] *Id.* at 46-47.

[34] *Id*. at 47.

sufficiently specific allegation regarding failure to communicate is that trial counsel "did not provide any discovery to him, nor did he review the discovery that he had obtained from the State with [Mora]."[35] The record is insufficient to resolve this claim.

### (b) Right to Testify

Mora argues that counsel failed to properly advise him about his right to testify and wrongly recommended that he not testify. This allegation of deficient performance is sufficiently stated, but the record is insufficient to review it.

### (c) Penile Swab

Mora claims that counsel performed deficiently by failing to have the penile swab retested and failing to retain an expert witness to refute the State's DNA evidence. He backs up this statement by making specific arguments about what counsel should have done and why. This allegation is also sufficiently stated, but the record is insufficient to resolve it.

### (d) Character Witnesses

Finally, Mora assigns that counsel failed to explore calling character witnesses and to call such witnesses at trial. Mora states that he provided information about witnesses counsel could have interviewed. He states that "[t]hose witnesses were individuals he worked with and the relatives and friends who had seen him with [B.C. and Marcela] prior to the accusations being made against him."[36] Although Mora alludes to what the witnesses would have testified to, he did not name the individuals.

We have required a significant degree of specificity in such claims. We explained that "we can think of no good reason why [an appellant] would be unable to give appellate counsel the names or descriptions of the uncalled witnesses he claims

---

[35] *Id.*

[36] *Id.* at 53.

he informed trial counsel of."[37] And we previously expressed concern "with the lack of any specificity as to who those uncalled witnesses were from the standpoint of a potential postconviction court's ability to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal."[38]

The same problem is present here. Mora's purported "descriptions" are too broad and indefinite and thus, fail to alleviate our concern. Because Mora did not identify or specifically describe the witnesses who he contends counsel should have called upon, he failed to make sufficiently specific allegations of deficient conduct.

## VI. CONCLUSION

We conclude that the district court properly admitted statements under the medical purpose hearsay exception, that any error in admitting statements under the excited utterance exception was harmless, that the evidence was sufficient, and that the sentences imposed were not excessive or plainly erroneous. Finally, we conclude that Mora's claims of ineffective assistance of counsel are either not sufficiently presented for our review or not able to be reviewed on the record before us. We therefore affirm the judgment of the district court.

AFFIRMED.

---

[37] *State v. Abdullah, supra* note 31, 289 Neb. at 134, 853 N.W.2d at 867.

[38] *Id.* at 133-34, 853 N.W.2d at 867.