IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MILLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

COREY R. MILLER, APPELLANT.

Filed June 27, 2023.    Nos. A-22-552 through A-22-554.

Appeals from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Corey R. Miller appeals from his plea-based convictions on three separate dockets in the district court for Lancaster County. He alleges that his trial counsel was ineffective and that his sentences are excessive. Based on the reasons that follow, we affirm.

## II. BACKGROUND

Miller was originally charged with one count of violating a protection order – prior offense in case No. CR 21-625; one count of violating a protection order – prior offense in case No. CR 21-631; and four counts of violating a protection order – prior offense in case No. CR 21-1206. The offenses were Class IV felonies. The charges all arose out of protection orders obtained by Miller's ex-girlfriend.

- 1 -

Based on a joint plea agreement for all three cases, Miller ultimately pled no contest to six counts of violating a protection order: one count in case No. CR 21-625; one count in case No. CR 21-631; and four counts in case No. CR 21-1206. The charges were Class I misdemeanors.

At the plea hearing, the State provided the following factual basis:

In case No. CR 21-625, Miller was served with a protection order on January 6, 2021, by the Douglas County Sheriff's Office. He was prohibited from telephoning, contacting, or otherwise communicating with J.Y., his ex-girlfriend. On February 5, 2021, J.Y. reported that Miller had been sending text messages to her in violation of the protection order from a phone number that she identified as belonging to him. He communicated with her in those text messages by calling her ugly and then apologizing. Officers subpoenaed the phone number and found multiple calls and a total of 2,800 messages to and from J.Y.'s phone number between February 5 and February 12, 2021. J.Y. was in Lancaster County when she received those phone calls and all events occurred in Lancaster County, Nebraska.

In case No. CR 21-631, Miller was served with a valid protection order on January 6, 2021, by the Douglas County Sheriff's Office, prohibiting him from contacting J.Y. On June 14, Miller texted J.Y. several messages including asking her about going to the police, indicating that he was sorry, and that he did not want a warrant against him. Those messages were received in Lancaster County, Nebraska, and all events occurred in Lancaster County, Nebraska.

In case No. CR 21-1206, Miller was served with a protection order on January 6, 2021, by the Douglas County Sheriff's Office, prohibiting him from contacting J.Y. On July 9, J.Y. reported that she had been receiving text messages through Facebook Messenger from Miller. There were messages dating from June 18 to July 9. J.Y. stated that she had been in regular contact with Miller both by messages and in person. She received the messages in Lancaster County, Nebraska. She also received messages on September 8. She reported receiving phone calls from jail from Miller, as well as two letters, one of which was dated August 30, 2021. Officers reviewed a video from the jail and Miller can be seen on the phone making a phone call to J.Y. On September 7, Miller had another inmate place a call to J.Y. and then Miller got on the phone. On September 9, Miller again attempted this method of communicating with J.Y. He had another inmate talk to J.Y. to ask if she got his letter. These events all occurred in Lancaster County, Nebraska.

The trial court found Miller guilty of the charges. It sentenced him to 365 days' incarceration on each of the six counts and ordered that the sentences be served consecutively.

### III. ASSIGNMENTS OF ERROR

Miller assigns that his trial counsel provided ineffective assistance by (1) failing to depose J.Y. and in promising Miller a certain sentence in advising him to accept the plea agreement, (2) failing to adequately review the presentence investigation report (PSI) with him, (3) failing to correct and add to the PSI at the time of sentencing, and (4) his representation at sentencing. Miller also assigns that the trial court erred in imposing excessive sentences.

### IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a

statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Miller assigns that his trial counsel, who was different from appellate counsel, provided ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Lowman, supra*. But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims; an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* This procedure promotes judicial economy by allowing the appellate court that is already examining the trial record to address the merits of the ineffective assistance claim at the first opportunity and to prevent postconviction courts from having to "'search for needles in haystacks'" to determine if a viable ineffective assistance claim could have been made on direct appeal. *Id.* at 798, 969 N.W.2d at 421, citing *State v. Abdullah*, 289 Neb. 123, 130, 853 N.W.2d 858, 865 (2014).

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Blake, supra.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.* A vague

or conclusory allegation of deficient performance is insufficient to raise and preserve a claim of ineffective assistance of counsel. See *State v. Abdullah, supra*.

When reviewing claims of alleged ineffective assistance of counsel, an appellate court affords trial counsel due deference to formulate trial strategy and tactics. *State v. Bedford*, 31 Neb. App. 339, 980 N.W.2d 451 (2022). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.* Even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Id.*

### (a) Failure to Depose J.Y.

Miller first assigns that his trial counsel was ineffective for failing to depose J.Y., the victim of the protection order violations. Miller contends that he was prejudiced by trial counsel's inaction but asserts that the record is deficient to address the claim and it is being brought to preserve the claim for postconviction relief. We do not agree.

During the plea colloquy, Miller expressly acknowledged that he had told his counsel everything he knew about the cases and was not aware of anything that could be helpful to him that he had not discussed with his counsel. He further acknowledged that he was satisfied with the work his trial counsel had done for him and believed his counsel was competent and knew what he was doing. In addition, he stated that he had enough time to talk to his counsel about the cases and his counsel had neither refused nor neglected to do anything Miller had asked of him.

Miller's statements in the record affirmatively refute his claim that counsel was ineffective for failing to depose J.Y. Miller does not challenge the knowingness and voluntariness of his admissions and responses during his colloquy with the district court. Based on Miller's clear admission that he told his counsel everything he knew about the cases and that counsel did not neglect or refuse to do anything that Miller asked of him, we find that counsel's performance was not deficient as a matter of law.

### (b) Promise of Particular Sentence

Within the same assignment of error, Miller claims that his trial counsel was ineffective because he promised Miller a particular sentence in exchange for his pleas. He again claims that the record is not sufficient to address this claim and he asserts it to preserve it. We disagree.

The record is sufficient to disprove Miller's allegation that his trial counsel promised him a certain sentence. At the plea hearing, the court explained the possible penalties to Miller and advised him that it was not bound to accept any sentence recommendations. Miller also indicated on the record, when asked by the trial court, that no promises had been made to him in exchange for his no contest pleas and no promises had been made to him regarding actual sentences he would receive. Accordingly, the record affirmatively rebuts Miller's allegation that he was prejudiced by his trial counsel's promise of a specific sentence.

### (c) Failure to Review PSI

Miller next assigns that his trial counsel was ineffective in failing to adequately review the PSI with him. He asserts that had counsel adequately reviewed the PSI with him, he would have been able to add items that were missing and could have resulted in lesser sentences.

At the sentencing hearing, Miller stated that he had not looked at or reviewed the PSI. His trial counsel responded that he had discussed the contents of the PSI with Miller. Miller agreed that he and his counsel did discuss it and stated that he was not aware of any changes or additions that needed to be made. Therefore, we conclude the record is sufficient to disprove Miller's allegation that his trial counsel was ineffective in reviewing the PSI with Miller.

(d) Failure to Correct and Add Information to PSI

Miller also assigns that his trial counsel was ineffective in failing to correct and add information to the PSI. He contends he was prejudiced because the PSI incorrectly stated that he was not an active participant in any organization or clubs in the community. Miller states that he was a "freemason" and a "Shriner" and had the court known about his involvement in these organizations it could have resulted in lesser sentences. He also states that the PSI failed to state that he had been employed as a service advisor at an auto sales company, and because of his incarceration, he lost his employment, his home, and his vehicle.

First, under "Key Life Areas of Strength" in the PSI, it states that Miller is a free mason and attends weekly meetings, as well as helping with fundraisers and holiday events. It also indicates that he was employed prior to being incarcerated. Second, it is clear from the statements made by the trial court at sentencing that Miller's community participation, his employment, and his losses because of his incarceration, would not have persuaded the court to issue a lesser sentence. The court focused on the number of Miller's protection order violations, his inability to stop contacting the victim, the benefit he received from the plea agreement, his argument that his violations were justified, his substance abuse, and his numerous rule violations while incarcerated.

Miller also contends that his counsel should have supplemented the PSI with his mental health records. He stated that his trial counsel had copies of these records and failed to produce them for inclusion in the PSI.

Regarding Miller's mental health, the PSI states that Miller completed a mental health screen, and his responses indicated a need for further intervention and mental health support. It also states that Miller reported he had been diagnosed with depression and anxiety and is taking medication for this diagnosis. The PSI further indicates Miller had attempted suicide two or three times in the past, with the most recent attempt occurring in July 2021. Miller acknowledges that this information was in the PSI but argues that to be persuasive to the court, it should have been "accompanied by professional evaluation and diagnosis." Brief for appellant at 14.

The PSI contains sufficient information regarding Miller's mental health and at the sentencing hearing the court stated that it reviewed the PSI. Miller does not state what additional information his mental health records would have provided or why it would have been useful to the court. He only contends that his records would have made the information about his mental health more persuasive. Further, had the trial court desired more detailed information about Miller's mental health, it could have requested it. See Neb. Rev. Stat. § 29-2204.03(1) (Reissue 2016) (when court desires more detailed information for determining sentence to be imposed than has been provided by presentence report, court shall commit offender to Department of Correctional Services to conduct complete study of offender).

We conclude that Miller was not prejudiced by trial counsel's failure to correct or add information to the PSI regarding Miller's community participation, prior employment, or mental health. This assignment of error fails.

(e) Representation at Sentencing

Finally, Miller assigns that his trial counsel was ineffective in representing him at sentencing. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022)*.* A vague or conclusory allegation of deficient performance is insufficient to raise and preserve a claim of ineffective assistance of counsel. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Miller's assignment of error does not specify how trial counsel was deficient at sentencing. Accordingly, his claim that his trial counsel was ineffective in representing him at sentencing is not raised with sufficient specificity for us to resolve the allegation or to preserve it for postconviction relief.

2. EXCESSIVE SENTENCES

Miller assigns that his sentences are excessive. It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id.*

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

In the three consolidated cases before us, Miller was convicted of six counts of violating a protection order, all Class I misdemeanors. The authorized sentence of imprisonment for a Class I misdemeanor is a maximum of one year, with no minimum. See Neb. Rev. Stat. § 28-106(1) (Reissue 2016).

The court sentenced Miller to one year imprisonment on each of the six counts, with the sentences to run consecutively to each other. It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). Miller's sentences are all within the statutory limits and, therefore, will not be disturbed absent an abuse of discretion. See *State v. Morton, supra.*

Miller argues that the trial court failed to adequately consider that his protection order violations were justifiable based on the circumstances, and that his conduct was non-violent. He further states that it was clear that he recognized the seriousness of his offenses and that a lower

sentence of imprisonment would be sufficient to deter others from violating protection orders and to protect society.

At the sentencing hearing, the court stated that it had reviewed Miller's PSI, including additions from Miller's attorney, and demonstrated a familiarity with the facts of Miller's cases. The district court discussed the facts and circumstances that led to Miller's violations, including Miller's perceptions about being deceived by the victim of the protection order violations. The court also noted the large number of protection order violations at issue, including some while he was in jail, Miller's inability to abide by court orders not to contact the victim, the benefit Miller received from the plea deal, his prior protection order violation in an unrelated case, his daily marijuana use, and his numerous rule violations while in jail.

In addition to Miller's previous conviction for violating a protection order, his criminal history includes a conviction for disorderly conduct (originally charged as third degree domestic assault), disturbing the peace (originally charged as criminal mischief), and injuring or destroying property of another. Further, Miller's Level of Service/Case Management Inventory assessment included an overall "high risk" score for recidivism. He scored "very high risk" or "high risk" in the alcohol and drug use category, procriminal attitude category (thoughts and beliefs), and anti-social pattern category (coping and self-control skills).

Based on the record before us, the trial court took the appropriate factors into consideration when sentencing Miller and there is no indication it considered any inappropriate or improper factors. Accordingly, it cannot be said that the trial court abused its discretion or that the sentences imposed were excessive. This assignment of error fails.

## VI. CONCLUSION

We conclude that Miller's claims of ineffective assistance of counsel either fail or were insufficiently pled. We also conclude that the trial court did not abuse its discretion in sentencing Miller and his sentences are not excessive. Accordingly, Miller's convictions and sentences are affirmed.

AFFIRMED.