IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. NAGEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

VINCENT R. NAGEL, APPELLANT.

Filed October 31, 2023.    Nos. A-23-011, A-23-012.

Appeals from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Vincent R. Nagel appeals his convictions and sentences in two separate cases which have been consolidated on appeal. Pursuant to a plea agreement encompassing both cases, Nagel pled no contest to possession of a deadly weapon by a prohibited person in case No. A-23-011 and pled no contest to attempted second degree murder and unlawful discharge of a firearm in case No. A-23-012. The district court for Hall County sentenced Nagel to 10 to 30 years' incarceration with credit for 2 days in the first case and to a sentence of 30 to 50 years' incarceration on each of the two charges in the second case, with credit given for 233 days. The court ordered the 30 to 50 year sentences to run concurrently to each other but consecutively to the 10 to 30 year sentence in the first case. On appeal, Nagel asserts that the sentences were excessive and that the State breached the plea agreement. Upon our review, we affirm.

- 1 -

BACKGROUND

On March 24, 2022, Nagel was charged by information in case No. A-23-011 with possession of a deadly weapon by a prohibited person, a Class ID felony. On August 15, in a separate information in case No. A-23-012, Nagel was initially charged with 8 counts: attempted second degree murder, a Class II felony; unlawful discharge of a firearm from or near a vehicle, a Class IC felony; unlawful discharge of a firearm, a Class ID felony; three counts of use of a deadly weapon to commit a felony, each a Class IC felony; possession of a deadly weapon by a prohibited person, a Class ID felony, and possession of a controlled substance, a Class IV felony. While the case was pending, the State filed an amended information dismissing the unlawful discharge of a firearm from or near a vehicle charge and two counts of use of a deadly weapon to commit a felony.

Pursuant to a plea agreement involving both cases, Nagel ultimately entered pleas of no contest to the charge of possession of a firearm by a prohibited person in case No. A-23-011 and to attempted second degree murder and unlawful discharge of a firearm in case No. A-23-012. All remaining charges were dismissed and the State agreed not to file any additional charges against Nagel arising from the events which led to these charges. The State further agreed to recommend that Nagel should receive concurrent sentences as to all charges. With respect to the length of the sentence, the State agreed to recommend that Nagel "be ordered to serve no more than 22 years before he becomes eligible for parole."

Nagel entered his no contest pleas on October 5, 2022. At the hearing, the court recounted the plea agreement, and Nagel affirmed that he understood the conditions of the agreement, he had adequate time to discuss the agreement with his attorney, and he was entering the plea willingly. The court then explained that the portion of the plea agreement related to sentencing recommendations was an agreement between the parties, but it was not binding on the court. The following discussion then took place:

> THE COURT: The Court will consider the agreement, but is free to enter any sentence that the Court believes is appropriate.
> [Nagel]: I understand.
> THE COURT: So you understand the plea agreement you're filing, in terms of Paragraph 2, the sentencing agreement, is not binding upon the Court?
> [Nagel]: I understand.

After ensuring that Nagel understood the terms and implications of the plea agreement, the court heard the following factual bases from the State:

> [W]ith regard to [case No. A-23-011], the State's evidence would show that on or about February 6, 2022, the Defendant, Vincent Nagel, went to the residence of Crystal Dahlke, the mother of his child. While there, a fight ensued between Nagel and Steven Skarka. At some point during the fight, Nagel pulled out a firearm and pointed it at Skarka. Dahlke then took the gun from Nagel. All of these events were captured on video and observed by officers when they arrived on the scene. The firearm was later located in the basement of the home. [Nagel] has previously been convicted of a felony and is prohibited from possessing a firearm.
>
> All of these events occurred in Hall County, Nebraska.

In regard to [case No. A-23-012], the State's evidence would show that on or about April 25, 2022, the Defendant, Vincent Nagel, pulled up in a white Toyota Avalon to the Island Inn on South Locust Street seeking out Joaquin Garcia. [Nagel] located Garcia at the location, brandished a handgun out the window of the vehicle, and then while in the vehicle, fired multiple shots in the direction of Garcia who was standing in front of the motel. These shots missed Garcia, but struck the Grand Island Inn, hitting a room that was occupied at the time.

All of these events occurred in Hall County, Nebraska.

The court found that the factual bases were sufficient to support Nagel's pleas. The court also found that Nagel understood and properly waived his constitutional rights and entered his pleas knowingly, voluntarily, and intelligently. The court accepted the pleas and found Nagel guilty of the three charges. A presentence investigation report (PSR) was ordered, and the cases were set for sentencing.

Sentencing was held on December 14, 2022. Defense counsel began his argument by discussing the sentencing recommendation both the defense and the State were operating under according to the plea agreement. Defense counsel stated, "[t]he State is recommending concurrent sentences for each count, each of the three counts, and also that the sentence on the bottom number be 22 years." The following exchange then occurred:

THE COURT: So the agreement is 22 years until he is parole eligible?

[DEFENSE COUNSEL]: That's correct. He would have to serve three years for the mandatory minimum on the ID.

Defense counsel asked the court to follow the sentencing recommendation agreed to in the plea agreement. The State did as well: "[T]o make sure that I satisfy the plea agreement in this case, the State is recommending concurrent sentences between these two cases. The State is recommending a bottom number of 22 years on these 2 sentences." However, as to the upper portion of Nagel's sentence, the State requested the maximum sentence. The State noted that Nagel's actions were not mistakes, but rather "heinous errors of judgment" and "choices that he made." Further, the State believed the maximum sentence was appropriate because, post-release, Nagel would be supervised under terms of parole for a significant period of time.

When the State concluded its argument, Nagel was given an opportunity for allocution. Nagel used this time to apologize to the court, his family, and his potential victims. He did not object to the State's comments or move to withdraw his pleas. The court then asked defense counsel if there was any legal reason why the sentence could not be imposed that day, and counsel responded "[n]o."

Information in the PSR revealed that, at the time of sentencing, Nagel was 41 years old and had a somewhat lengthy criminal history. Notably, Nagel was convicted of distribution of a controlled substance around 2012, which resulted in a period of federal incarceration, and third degree domestic abuse in 2021, which resulted in jail time. Nagel has participated in supervised release and probation, both of which were revoked. At the time of sentencing, Nagel also had a pending case in Lancaster County, Nebraska.

On the Level of Service Case Management Inventory assessment, Nagel had an overall risk level of very high, and scored high in the key life areas of criminal history, leisure/recreation, companions, alcohol/drug problems, procriminal attitude, and antisocial pattern. On the Substance Abuse Questionnaire, Nagel scored in the maximum risk range for drugs, violence, and antisocial behaviors, and scored in the problematic risk range for alcohol and aggressiveness. Nagel reported that he began using methamphetamine at age 19 and has struggled abstaining from the drug ever since. His substance abuse evaluation revealed diagnoses of severe methamphetamine use disorder and moderate alcohol and cannabis use disorders. Nagel wrote the court a letter detailing his struggle with drug use and his remorse concerning his crimes.

The court indicated that it had reviewed the PSR and its attachments prior to the sentencing hearing. The court reviewed the contents of the PSR with Nagel, including his prior convictions, his drug use, and his various assessment scores. The court emphasized that while Nagel was an experienced plumber and had a supportive family, he continued to use drugs and commit crimes. The court also stressed that Nagel's assessment scores showed he was at a high risk of reoffending and was a substantial risk to the community. The court concluded that Nagel's crimes were serious and violent and that Nagel was fortunate that no one was killed when he discharged his firearm.

In case No. A-23-011, the court sentenced Nagel to 10 to 30 years' incarceration with credit for 2 days served for possession of a deadly weapon by a prohibited person. In case No. A-23-012, the court sentenced Nagel to 30 to 50 years' incarceration with credit for 233 days served for attempted second degree murder, and a concurrent term of 30 to 50 years' incarceration for unlawful discharge of a firearm. The sentences for the two charges in case No. A-23-012 were ordered to be served consecutively to the sentence in case No. A-23-011, resulting in an aggregate sentence of 40 to 80 years' incarceration.

Nagel appeals.

## ASSIGNMENTS OF ERROR

Nagel assigns first that the district court erred in imposing excessive sentences. Nagel next assigns that the district court erred by allowing the State to argue for a sentence more punitive than that contemplated by the plea agreement.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

When the facts are undisputed, the question of whether there has been a breach of a plea agreement is a question of law. *State v. Smith*, 295 Neb. 957, 892 N.W.2d 52 (2017). When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

ANALYSIS

*Excessive Sentences.*

Nagel first assigns that the district court abused its discretion by imposing excessive sentences. Upon our review of the record, we find no abuse of discretion in the sentences imposed.

When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Nagel cannot and does not dispute that any of his sentences were not within the statutory limits. As charged by the State, possession of a deadly weapon by a prohibited person is a Class ID felony. Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022). A Class ID felony is punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). The district court's sentence of 10 to 30 years' incarceration with credit for 2 days served is clearly within the statutory limits. Nagel's unlawful discharge of a firearm conviction is also a Class ID felony. Neb. Rev. Stat. § 28-1212.02 (Reissue 2016). The district court's sentence of 30 to 50 years' incarceration on that conviction is within the statutory limits as well.

Similarly, the district court's sentence of 30 to 50 years' incarceration for Nagel's attempted second degree murder conviction is within the statutory limits. Attempted second degree murder is a Class II felony. Neb. Rev. Stat. § 28-201 (Reissue 2016). A Class II felony is punishable by a minimum of 1 year imprisonment and a maximum of 50 years' imprisonment. § 28-105.

Nagel contends that the court abused its discretion by failing to properly consider and weigh the sentencing factors. We disagree. We first note that a sentencing determination is not limited to the consideration of the sentencing factors enumerated in *State v. Mora, supra*. Nevertheless, the record shows that the court reviewed and considered Nagel's age, mentality, education, experience, social and cultural background, past criminal record, law-abiding conduct, the nature of the offenses, the motivation for the offenses, and the violence involved in the offenses. The court noted that while Nagel was an experienced plumber and had a supportive family, he continued to use drugs and commit crimes. His criminal history included serious convictions, including domestic assault and distribution of a controlled substance. Nagel's assessment scores also indicated he was at a high risk of reoffending and was a substantial risk to the community. While the court acknowledged that Nagel expressed remorse in his letter, it ultimately found that the sentencing factors and the circumstances surrounding the crimes supported a significant period of incarceration.

The district court considered all of the relevant factors, including Nagel's substance abuse problems and his criminal history. We find no abuse of discretion in the sentences imposed.

*Breach of Plea Agreement.*

Nagel next assigns that the district court erred by allowing the State to argue for a sentence more punitive than that contemplated by the plea agreement. Specifically, Nagel argues that the State violated the plea agreement by recommending that the upper number of each sentence imposed be the statutory maximum. We find no merit in Nagel's argument.

First, Nagel has failed to properly preserve this alleged error for appellate review. The Nebraska Supreme Court has held that a defendant who remains silent at the time of sentencing with regard to an alleged breach of a plea agreement by the State can neither move to withdraw the plea nor seek specific performance of the agreement. *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003). The record shows that despite Nagel and his attorney being present for the State's argument at sentencing, no objection was made during the course of the sentencing hearing. Nagel admits in his brief on appeal that no one raised this issue to the district court. Thus, Nagel has waived his right to assert as error on appeal any purported breach of the plea agreement by the State.

In the alternative, Nagel asserts that the sentencing court committed plain error by allowing the State to breach the agreement. We find no plain error. Courts enforce only those terms and conditions about which the parties to a plea agreement did in fact agree. *State v. Smith*, 295 Neb. 957, 892 N.W.2d 52 (2017). A party breaches a plea agreement either by: (1) violating an express term of the agreement, or (2) acting in a manner not specifically prohibited by the agreement but still incompatible with explicit promises made therein. See, *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020); *State v. Landera*, 285 Neb. 243, 826 N.W.2d 570 (2013). Further, plain error will be noted only where an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Burbach*, 20 Neb. App. 157, 821 N.W.2d 215, *aff'd*, 284 Neb. 870, 823 N.W.2d 697 (2012).

Under the plea agreement, the State agreed to recommend that Nagel "be ordered to serve no more than 22 years before he becomes eligible for parole." At sentencing, defense counsel confirmed this phrasing was accurate by informing the court that both parties were recommending that "the sentence on the bottom number be 22 years." The State then recommended "a bottom number of 22 years on these 2 sentences." We first note that under the plain terms of the written plea agreement, the State was allowed to recommend a sentence that, after good time reductions, would still require Nagel to serve 22 years. Instead, the State recommended an actual bottom number of 22 years, which with good time credit could result in parole at a substantially earlier point. Further, the plain language of the plea agreement does not place any restrictions on what the State could recommend with respect to the upper limit of Nagel's sentence. The State's characterization of the crimes and its recommendation regarding the upper portion of Nagel's sentence are neither violations of an express term nor are they incompatible acts with the explicit promises made in the agreement. Therefore, as there is no breach of the plea agreement, we find no plain error in the State's recommendations or the court's consideration of them.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.